(Nos. 24342, 24343, 24344.—)

THE PEOPLE *ex rel.* Bessie L. McDavid, Appellee, *vs.* EDWARD J. BARRETT, Auditor, *et al.* Appellants.—THE PEOPLE *ex rel.* Kathryn L. Niehaus, Appellee, *vs.* EDWARD J. BARRETT, Auditor, *et al.* Appellants.—THE PEOPLE *ex rel.* Mary G. Graham, Appellee, *vs.* EDWARD J. BARRETT, Auditor, *et al.* Appellants.

*Opinion filed February 15, 1939.*

SHAW, C. J., and WILSON, J., dissenting.

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, W. F. GRAY, and WILLIAM C. CLAUSEN, of counsel,) for appellants.

ROBERT G. GRAHAM, JOHN M. NIEHAUS, JR., HOWARD L. DOYLE, and MONROE & ALLEN, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The question in each of these cases involves the constitutionality of an appropriation by the legislature to the widow of a deceased circuit judge in an amount equal, in two instances, to his salary from the date of his death to the time of the qualification of his successor. In the other instance, the appropriation was equal to a substantial portion of such salary. The Auditor of Public Accounts and the State Treasurer have appealed in each case from a judgment of the circuit court of Cook county awarding a writ of *mandamus* compelling the Auditor to issue warrants for and the State Treasurer to pay the amounts appropriated to the respective relators by the legislature. Motions to strike the petitions for the writ were overruled and the defendants elected to stand by their motions. Judgments were entered awarding the writs. These appeals followed and the causes have been consolidated in this court.

The appropriations were as follows: In cause No. 24342, to Bessie L. McDavid, widow of Horace W. McDavid, judge of the sixth circuit, $2740; in cause No. 24343, to Kathryn L. Niehaus, widow of John M. Niehaus, judge of the tenth circuit, $3784.25, and in cause No. 24344, to Mary G. Graham, widow of Willis F. Graham, judge of the ninth circuit, $8000.

The public records show that Judge Niehaus served as circuit judge for approximately twenty-one years, and as judge of the Appellate Courts for the Second and Third Districts for twenty years. Prior to that time he was State's attorney of Peoria county for nine years. He was a representative in the legislature for one term and a member of the senate for a like period, and had been master in chancery in Peoria county for fifteen years. Prior to Judge McDavid's election as circuit judge, he was a representative in the legislature for a number of years. Judge Graham's incumbency as circuit judge continued for approximately ten years.

Appellants claim the appropriations were attempts to provide gratuities from public funds for the exclusive benefit of private persons and are, therefore, unconstitutional, as not for a public purpose, in violation of section 20 of article 4 of the constitution, and the due process clause. Section 16 of article 6, and section 19 of article 4 of the constitution, are stressed on the theory that because they apply to circuit judges and other public officials, the prohibitions therein must necessarily be applied to their widows. Section 16 of article 6 prohibits the increase of a circuit judge's salary during his incumbency, or his receiving any other compensation, perquisite or benefit in any form. Section 19 of article 4 prohibits the granting of any extra compensation to any public officer, agent, servant or contractor, after service has been rendered or contract made. The purpose of these constitutional provisions is obvious. Temptation of a public official, through pressure or persuasion or because of gratitude, to favor parties or individuals procuring or promoting a legislative increase of his salary, is removed from the incumbent's path. The reason for prohibiting any extra compensation is summarized in *Hogan* v. *Stophlet,* 179 Ill. 150, where we held that it closes the door to corruption and fraud. It is a well-recognized canon of constitutional construction that the chief purpose sought to be attained is the intention of its framers. In seeking such an intention courts are to consider the language used, the object to be attained or the evil to be remedied. Where the constitutional provisions are not applicable, no limitation exists upon the legislative body. In the construction of the constitution courts should not indulge in speculation apart from the spirit of the document, or apply so strict a construction as to exclude its real object and intent. (*Peabody* v. *Russel,* 301 Ill. 439.) That an appropriation made to the widow of a deceased public officer bears no relation to the purposes of these constitutional prohibitions is so plain as to admit of no argument. It is further to be

noticed that in *Hagler* v. *Small*, 307 Ill. 460, we said that the beneficiaries under "An act to provide payment of compensation to certain persons who served with the military or naval forces of the United States in the recent war with Germany" did not come within section 19 of article 4 of the constitution, since they did not stand in the relation of public officers, agents, servants, or contractors of or with the State. Neither does a widow of a circuit judge come within any of the specified classes.

Appellants say that, in the last analysis, this case presents the single question: Were the appropriations made for a public or a private purpose? Section 20 of article 4 of the constitution, invoked by appellants, provides: "The State shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual." Both parties concede the law to be that under the due process clause of the constitution (sec. 2, art. 2) taxes can be levied for public purposes only. (*Chicago Motor Club* v. *Kinney*, 329 Ill. 120; *Hagler* v. *Small, supra.*) Appellees claim, however, that merely because a private individual receives the benefit of an appropriation that fact, alone, does not make the appropriation one for a private purpose, as distinguished from a public purpose. In *Hagler* v. *Small, supra,* we held that if the purpose of an act is private, only, it violates section 20 of article 4, but if it is public it does not.

Whether a tax or an appropriation is for a public or a private purpose is a question not always easy of determination. In *Hagler* v. *Small, supra,* we said, "In deciding whether such purpose is public or private, courts must be largely influenced by the course and usage of the government, the object for which taxes and appropriations have been customarily and by long course of legislation levied and made, and what objects have been considered necessary to the support and for the proper use of the government.

Whatever lawfully pertains to this purpose and is sanctioned by time and the acquiescence of the people may well be said to be a public purpose and proper for the maintenance of good government. (*Loan Ass'n* v. *Topeka,* 20 Wall. 655.) What is for the public good and what are public purposes are questions which the legislature must, in the first instance, decide. In so doing it is vested with a large discretion, which the courts cannot control except where its action is evasive of or contrary to some prohibition of the constitution. Limitations resting in theory, only, or on the vague ground of doubt, but which the people have been satisfied to leave to the judgment, patriotism and sense of justice of their representatives, are not within the control of the courts. (*Loan Ass'n* v. *Topeka, supra;* Cooley's Const. Lim. 154.) The power of the State to expend public moneys for public purposes is not to be limited, alone, to the narrow lines of necessity, but the principles of wise statesmanship demand that those things which subserve the general well-being of society and the happiness and prosperity of the people shall meet the consideration of the legislative body of the State, though they ofttimes call for the expenditure of public money. If it can be seen that the purpose sought to be obtained is a public one and contains the elements of public benefit, the question how much benefit is thereby derived by the public is one for the legislature and not the courts. (*Taylor* v. *Thompson,* 42 Ill. 9; *Loan Ass'n* v. *Topeka, supra; Daggett* v. *Colgan,* 92 Cal. 53; 14 L. R. A. 474, note.) In determining whether or not the sovereign taxing power is used in the public interest, the judgment of the legislature is to be accepted in the absence of a clear showing that the purported public purpose is but an evasion and that the purpose is, in fact, private.— *Jones* v. *City of Portland,* 245 U. S. 217; *State* v. *Johnson,* 170 Wis. 218; *Gustafson* v. *Rhinow,* 144 Minn. 415; *State* v. *Clausen,* 113 Wash. 570; *Opinion of Justices,* 211 Mass. 608."

In *Hagler* v. *Small, supra,* we upheld the granting of a bonus to soldiers as a public purpose on the ground that the primary purpose of the act was to incite patriotism, encourage the defense of the country in future conflicts, and promote the general welfare. We held that representative government finds its greatest security in a strong spirit of patriotism and love of country; and that whatever tends to a greater patriotism and a greater interest in government makes for the welfare of the State. We pointed out that the erection of monuments and the awarding of swords and medals have always been recognized as means of rewarding meritorious service, and the legislature might use public funds for such purposes. We said that while the payment of money may have in it an element of private benefit not found in the erection of a statue or the gift of a medal, yet it is no less a recognition of meritorious service, and does not, because it is money, become a private purpose, merely. We further said: "If the purpose be public it is so because it makes for the public weal. If such be the effect of it, the power to carry out such purpose does not rest on obligation to the individual but is found in the general welfare provisions of the constitution, and is based upon the principle that the State is empowered to do that which it ought to do for the public good. Such purpose is not primarily concerned with the interest of the individual but with the welfare of the public as a whole." We held that such a purpose is not defeated by the fact that individuals benefit thereby, and called attention to the fact that the execution of a public purpose which involves the expenditure of money is usually attended with private benefits. Another significant holding in that case, supported by *United States* v. *Realty Co.* 163 U. S. 427, and *Gilford* v. *Chenango County Supervisors,* 13 N. Y. 143, is that a moral obligation is a sufficient basis for an appropriation of public money to an individual if the purpose be a public purpose. In *Wyoming* v. *Carter,* 215 Pac. 477, an appropriation of $3000 to the

widow of an under-sheriff killed in the line of his duty was upheld under constitutional provisions similar to our own.

In *Opinion of Justices,* 240 Mass. 616, following the rule laid down in *Opinion of Justices,* 175 Mass. 599, an appropriation to the widow of a deceased clerk of the senate of the amount he would have received had he lived to the end of the current year was held valid as for a public purpose. The opinion sets out the familiar rule that money raised by taxation can be expended only for strictly public purposes, and holds such a purpose does not become unlawful merely because money may be paid to private persons without previous claim to it of any kind. It points out that the power to give gratuities in the nature of military pensions has been upheld since the early days of our government and is not open to doubt. Quoting from its earlier decision, above cited, it holds the power to give rewards after the event of conspicuous public service cannot be limited to military service; that if a man has deserved greatly of the commonwealth by civil services, the public advantage of recognizing his merit stands on ground as strong as that for rewarding a General; that the possibilities of genius or distinguished worth cannot be foreseen so as to be settled for in advance, and the public welfare, alone, is the only legal justification for such payment; and that whether the public good will be served, must be left largely to the conscience of the legislature. There was in that case, and in the cases at bar, no declaration of a public purpose in the legislation for the appropriation. It was there held that facts similar to those mentioned herein showing the public services of the deceased judges were of general knowledge and it might be inferred those considerations actuated the legislature in reaching a conclusion that the public good would be promoted by the appropriation. The opinion concludes: "We are unable to say that the judgment of the General Court as expressed in the resolve was not based upon genuine belief resting upon sufficient foundation that persons of large ability, unblemished char-

acter, and lofty aspirations will be induced to enter the service of the commonwealth in important positions of great trust, that unselfish exertion for the public weal by those hereafter holding office will be stimulated, and loyalty to the government and patriotism will be inculcated, by this recognition of the extraordinary nature of the devotion to the general welfare in a responsible post exemplified in the career of Mr. Coolidge as the faithful and masterful clerk of the State Senate." The principles there announced are fully applicable here. The fact that there is no constitutional provision in the State of Massachusetts similar to section 16 of article 6 and section 19 of article 4 of our constitution does not serve to distinguish the reasons for the holdings there from the reason for holding the appropriations in this case to be valid. Those sections of the constitution, as we have seen, have no application here. It is to be observed that, since 1841, Congress has made various appropriations to the widows or children of twelve deceased Presidents of the United States, and that, since 1889, the legislature of this State has made appropriations to the widows, children, mother or estates of several distinguished judges and members of the General Assembly. While this fact, alone, does not establish the constitutionality of the legislation (*Fergus* v. *Brady*, 277 Ill. 272; *Peabody* v. *Russel, supra;*) yet the court, in determining whether an act is public or private, may take into consideration a long course of legislation and usage of the government. *Hagler* v. *Small, supra.*

Our conclusion is that the appropriations in controversy are of a public nature enhancing the general welfare and are, therefore, valid.

The judgment of the circuit court in each of the causes, Nos. 24342, 24343 and 24344, is affirmed.

*Judgments affirmed.*

SHAW, C. J., and WILSON, J., dissenting.