Frank A. Traylor, M.D. Executive Director Colorado Department of Health 4210 E. 11th Avenue Denver, CO 80220
Dear Dr. Traylor:
This letter responds to your request for an attorney general's opinion regarding a proposed bill ("the bill") to establish a soil conservation land improvement fund ("the fund").
QUESTIONS PRESENTED AND CONCLUSIONS
Your letter, as modified by subsequent conversations, raises the following four constitutional questions:
1. Whether the bill, which authorizes low interest loans for the construction of soil conservation projects, violates the ban on private appropriations found at Colo. Const. art. V, §34?
 My conclusion is that the bill does not violate this provision. If the general assembly determines that the public benefits of the bill would preponderate over any incidental private benefit which it created, that determination would be upheld by the courts.
2. Whether the bill would authorize a pledge of the state's credit to third parties, in violation of Colo. Const. art. XI, § 1?
 My conclusion is that the bill does not authorize the state to pledge its credit to third parties. The bill would simply allow the state to make loans to third parties from any monies which had already been placed in the fund. The bill does not allow the state to become responsible for the debts or obligations of any person.
3. Whether the bill authorizes the state to make a donation or grant to a private corporation, contrary to Colo. Const. art. XI, § 2?
 My conclusion is that the bill does not allow the state to make any such donation or grant. The bill allows the state to make loans, not outright grants or donations. In addition, article XI, section 2 appears to be inapplicable where a bill would primarily create public benefits and only incidentally aid private parties.
4. Whether the bill authorizes the state to contract any debt by loan contrary to the command of Colo. Const. art. XI, § 3?
 My conclusion is that the bill does not allow the state to contract any debt at all. Article IX, section 3 limits the state's ability to borrow money. The bill calls for the state to lend money, not to borrow it.
ANALYSIS
1. The bill would establish a soil conservation land improvement fund to consist of money appropriated by the general assembly, proceeds from loans made from the fund, and all contributions to be made from any other source. Monies from the fund would be loaned for the construction of conservation projects on lands which are located within a legally constituted soil conservation district and which are used primarily for agricultural purposes. The general purpose of the conservation projects would be to enhance the value of Colorado's land and water resources. See proposed section 35-71-105.
The fund would be administered by the state soil conservation board, which would be assisted in the processing of loan applications by local soil conservation districts. The loans would be for between $2,500 and $50,000. The interest rate on the loans would be established by the state soil conservation board, and would not exceed five percent per annum. Loans could be made by the board "within the limitations of the moneys appropriated and available from repayment of loans with interest and from other sources." Section 35-71-107(1). The board would be expressly proscribed from making any loan in the form of a pledge of the credit of the state. Id.; section 35-71-109.
The bill raises a number of constitutional issues which merit discussion. The first is whether the bill would violate Colo. Const. art. V, § 34, which states: "No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, nor to any denominational or sectarian institution or association."
The manifest purpose of this provision is to forbid appropriations of public funds which would serve private, rather than public, interests. The bill does call for the lending of public funds to private parties. Moreover, the recipients of the loans could benefit from the conservation projects to which the loan money is to be applied through an increase in the value of their land.
That private citizens would personally benefit from the appropriations to the fund, however, does not mean that the bill is in conflict with the constitutional ban on private appropriations. It is well settled that appropriations which are made primarily for a public purpose do not offend the constitution simply because the incidental recipients of the appropriations are private parties who personally benefit from the appropriations. See Americans United forSeparation of Church and State Fund, Inc. v.Colorado, 648 P.2d 1072 (Colo. 1982); In ReInterrogatories H.B. No. 1247, 193 Colo. 298,566 P.2d 350 (1977); Bedford v. White, 106 Colo. 439,106 P.2d 469 (1940). To pass constitutional muster, "the legislation must evince a discrete and particularized public purpose which, when measured against the proscription of Article V, Section 34, preponderates over any individual interests incidentally served by the statutory program." Americans United for Separationof Church and State Fund, Inc., 648 P.2d at 1086.
Here, the "discrete and particularized" public purposes which the bill would serve are expressly stated in proposed section 35-71-105(2). That provision refers to such purposes which serve the public interest as the improvement of water quality, the control of soil erosion and sedimentation, the conservation of existing water supplies, and several others. I should stress, however, that the bill would be constitutional only if a reasonable case can be made that the public benefits flowing from the loans made pursuant to the bill do indeed preponderate over any benefits to the loan recipients. On its face, the bill appears to authorize loans which would meet this test.
Should the general assembly pass this bill, its determination that these public purposes preponderate over any private benefits created by the bill would be entitled to considerable deference from the courts. In quoting from a case decided by the Supreme Court of Illinois, the Supreme Court of Colorado has stated:
 If it can be seen that the purpose sought to be obtained is a public one and contains the elements of public benefit, the question how much benefit is thereby derived by the public is one for the legislature and not for the courts.
Bedford v. White, 106 Colo. at 454, 106 P.2d at 476
quoting People ex rel. v. Barrett, 370 Ill. 478,481, 19 N.E.2d 356, 359 (1939).
2. The bill also would not contravene Colo. Const. art. XI, § 1, which provides that the state may not lend or pledge its credit to third parties or become responsible for the debts of third parties. The purpose of this provision is to protect general tax revenues by ensuring that the state does not commit them in advance to cover the debts or obligations of others. Comment, State Constitutional Provisions Prohibiting theLoaning of Credit to Private Enterprise — A SuggestedAnalysis, 41 U. Colo. L. Rev. 135, 143-44 (1969). The bill does not authorize the state to lend its credit to third parties. Proposed sections 35-71-107(1), -109 expressly state that the board may not pledge the credit of the state by authorizing loans beyond the amount available in the fund. Contributions to the fund by the general assembly would be purely discretionary, and no such appropriation at all could be made under the terms of the bill. The bill does not give the state any obligation to cover the debts or obligations of any other party, and thus does not conflict with article XI, section 1. See,e.g., Denver Urban Renewal Authority v.Byrne, 618 P.2d 1374 (Colo. 1980); In ReInterrogatories H.B. 1247, 193 Colo. 298, 566 P.2d 350
(1977); Ginsberg v. City and County of Denver,164 Colo. 572, 436 P.2d 685 (1968).
In addition, the Supreme Court of Colorado has stated that article XI, section 1 is inapplicable where an appropriation furthers a valid public purpose. Gude v. Lakewood,636 P.2d 691, 695 n. 2 (Colo. 1981); In ReInterrogatories, 193 Colo. at 306-07, 566 P.2d at 356. I have already noted that Colorado courts would be likely to defer to a determination of the general assembly, as stated in proposed section 35-71-101(2), that the bill serves a valid public purpose. Cf. Pueblo v. Weed, 39 Colo. App. 415,418, 570 P.2d 15, 18 (1977), rev'd on othergrounds, 197 Colo. 52, 592 P.2d 80 (1979) (passage of ordinance authorizing issuance of revenue bonds by city to finance pollution control equipment for use at steel company, and providing that bonds were to be retired by rental payments made to city by steel company, serves "public good generally");Ginsberg v. City and County of Denver,164 Colo. 572, 436 P.2d 685 (1968) (acquisition of sports stadium by city serves public purpose); State ex rel. Amemiya v.Anderson, 56 Haw. 566, 545 P.2d 1175 (1976) (issuance by state of revenue bonds to finance pollution control equipment for use at private power company serves a public purpose); seegenerally, Goldfarb and Heenehan, Legal Control of SoilErosion and Sedimentation in New Jersey, 11 Rut.-Cam. L.J. 379 (1980).
3. The bill would not offend Colo. Const. art. XI, § 2, which provides in pertinent part:
 Neither the state, nor any county, city, town, township, or school district shall make any donation or grant to, or in aid of of, or become a subscriber to, or shareholder in any corporation or company or a joint owner with any person, company, or corporation, public or private, in or out of the state, except as to such ownership as may accrue to the state by escheat, or by forfeiture, by operation or provision of law . . . .
The bill does not provide for any grants or donations but only for loans. A low interest loan may not be equated with a donation because a donation is generally considered to be an outright gift. See, e.g., Black's Law Dictionary, 576 (4th ed. 1968).
Nor would the bill violate article XI, section 2 by authorizing joint public and private ownership. Admittedly, under proposed section 35-71-106(1)(c) the state could obtain a security interest in property owned by the loan recipient. This is not tantamount to joint ownership, however, or to the type of public/private partnership which is banned by article XI, section 2. See, e.g., Allardice v. Adams County,173 Colo. 133, 476 P.2d 982 (1970); Lord v. City and County ofDenver, 58 Colo. 1, 143 P. 284 (1914).
Finally, article XI, section 2 does not forbid enactment of a statute which primarily creates public benefits, even if it also incidentally aids private parties. Denver Urban RenewalAuthority v. Byrne, 618 P.2d at 1383-84; seeLyman v. Town of Bow Mar, 118 Colo. 191, 533 P.2d 1129
(1975). This case appears to involve such a statute.
4. The bill does not conflict with Colo. Const. art. I, § 3, which provides that the state shall not "contract any debt by loan" save in special circumstances not relevant here. The purpose of this section, like that of article XI, section 1, is to protect future state revenues by forbidding their advance commitment. In re Interrogatories, 193 Colo. at 305,566 P.2d at 355. Section 1 forbids the state from becoming responsible for the debts of others, while section 3 limits the circumstances in which the state may itself become indebted by borrowing money. The bill does not call for the state to borrow money, nor, more generally, does it create any obligation for future state revenues. As I have already stated, future sessions of the general assembly would not have to appropriate any money as a result of the bill, because sections 35-71-107, -109, proscribe loans in any amount beyond those monies already placed in the fund. The bill creates no state "debt," and does not offend article XI, section 3.
Finally, I would note that this opinion should not be construed as a legal endorsement of all facets of the proposed legislation, as it addresses only the specified legal issues addressed by your inquiry.
SUMMARY
My opinion is that the bill would not violate the constitutional provisions regarding appropriations to private parties, pledging of state credit, aid to private corporations, or the creation of state debt through loans.
Very truly yours,
 DUANE WOODARD Attorney General
APPROPRIATIONS PUBLIC FUNDS SOIL AND WATER CONSERVATION
Colo. Const. art. XI, § 1
Colo. Const. art. XI, § 2
Colo. Const. art. XI, § 3
Colo. Const. art. V, § 4
HEALTH, DEPT. OF NATURAL RESOURCES
Proposed bill which would authorize low interest loans for soil conservation projects does not violate constitutional proscriptions against pledging of state credit, private appropriations, aid to corporations, or contracting of debt by loan.